# James M. Reynolds *v.* N. G. Nye.

Where one of the defendants in an execution, on which only $12 of the original judgment was due, ordered out an execution, directed it to be levied on property of his co-defendant in the execution, valued at $5,000 to $8,000, and purchased the same himself at sheriff's sale for the sum of $10 ; held by the court, that the sale was fraudulent, and that the same would be set aside on the payment by complainant of the balance due on the execution under which the lots were sold.

A court of equity will set aside a sale made under execution, when the sale is tainted with fraud or infected with other vices which render it inequitable that it should stand.

Where a sheriff finds that property which he exposes to sale is about to be sacrificed, he should return that it was not sold for want of bidders, and wait for a *venditioni exponas.*

A defendant has no right to sue out an execution against himself and co-defendants.

This case was submitted on the motion of defendant to dissolve the injunction, and for the appointment of a receiver.

The complainant alleges, that on the 12th day of April, 1839, James R. Creecy conveyed in trust, for certain purposes, lot No. 9 and lot No. 147, situated in Yazoo city, to Charles E. Mount; that pursuant to a sale made by said Mount, as trustee, he on the 12th of May, 1840, executed a deed to complainant for said lots; that complainant purchased said lots and the other property mentioned in exhibit B., at the sum of two thousand and twenty-five dollars; that an execution, emanating on a judgment in favor of Jordan & Smith against J. R. Creecy, said defendant *et al.* rendered on the 14th day of May, 1838, was levied on said lots, and they were, in the summer of 1841, sold in pursuance of said levy, and that said defendant became the purchaser at the price of five dollars each. That said levy and sale were induced by the said defendant, without the authority of the plaintiffs in said judgment, and with the fraudulent intent of purchasing said lots at a sacrifice. That said sale was made at a sickly season of the year,

when few persons were present, &c. &c.; and that there was due on said judgments, and unpaid, a very small sum only; that at the time said sale took place said execution was injoined by virtue of a writ of injunction issued from this court, in case No. 1565, entitled Briggs, Lacoste & Co. *et al. v.* J. R. Creecy *et al.;* that said defendant has commenced an action of ejectment for the purpose of gaining possession of said lot No. 9.

The bill charges fraud, and closes by praying an injunction, and for the appointment of a receiver of the rents of lot No. 9, to abide the result of this controversy.

The defendant denies that J. R. Creecy was the owner of said lot No. 9, at the date of the trust deed to Mount, but charges that said Creecy had previously, on the 1st of June, 1838, conveyed said lot to Creecy & Smith, by deed filed for record on the 4th of March, 1839, as shown by exhibit No. 1. He says said two lots are worth about five thousand dollars; that said lot No. 147 was sold in October, 1839, under a judgment older than said trust deed to Mount, and purchased by one Henry Holmes; and that it was also sold for taxes due upon it. He denies that at the time said sale under the execution of Jordan & Smith took place, said execution was injoined; says said sale did not take place at an unhealthy season of the year, or when few persons were present; but that the season was healthy, the day a general sale day, and one on which an election was held at Benton for the election of a sheriff. He admits that he had said execution issued without authority from the plaintiffs, but that he did it with the knowledge and consent of their attorney. He says he was in said execution secondarily liable if the money was not made out of Creecy, and insists that he had a right, for his own security, to have said execution issued and levied on Creecy's property, and that he did so for his own indemnity alone. He says there was due on said execution at the time of sale two hundred dollars.

He admits the price bid by him for said lots to have been less than their worth; says he was determined to make them binding for the amount due on the execution, had any one bid against him. He unequivocally denies every charge of fraud made in the bill, and every circumstance of fraud there alleged; says that bidders were deterred from hazarding a purchase of said lots by the most

extraordinary complexity and confusion and doubt by which the title to them was involved, and that he was induced by these circumstances to bid cautiously.

He alleges that he entered into an agreement with complainant to permit Mr. Hyatt to receive and hold the rents accruing on said lot No. 9, until the controversy should be determined; but that complainant in violation of this agreement has instituted judicial proceedings for the recovery of said rent, and has obtained a judgment against the tenant in possession for the sum of $

He prays that a receiver of rents may be appointed, and that complainant be restrained from the enforcement of his judgment against said tenant.

R. S. Holt, for the motion to dissolve.

The complainant places the invalidity of the sheriff's sale under which defendant derives title, on two grounds. First, fraud; and second, the existence of an operative injunction at that time restraining the enforcement of the execution. The answer fully and distinctly denies every charge of fraud, both general and special. Two facts alone, alleged as indicative of fraud, are admitted to be true. That the execution was issued at the instance of defendant, and that the sum bid fell far short of the value of the property.

The validity of a sale under execution does not depend in any degree upon the person at whose instance the clerk issues the execution. The execution is the mandate of the court, deriving its validity from the judgment on which it emanates, and is independent of the foreign agency at whose instance the ministerial officer of the court acted in its issuance.

But it may be urged that the fact that the defendant was active in inducing the clerk to issue the execution, taken in connexion with his subsequent purchase, is a fact indicative of fraud on his part. Unexplained, it might be a suspicious circumstance. But in this case, the facts, that the defendant was secondarily liable in the execution, that this levy was necessary for his indemnity, that the delays of the plaintiffs were constantly increasing his danger, repel in the most triumphant manner every presumption of fraud, and shows that the defendant used, for his own indemnity, but

those means which the law placed within his reach, and which every man of ordinary prudence would have resorted to.

Mere inadequacy of price has never been held *per se* sufficient to invalidate a sale. 1 Sto. Equity, 248, 249, 250, and cases cited.

It has never been held that such inadequacy amounts to any thing more than an item of circumstantial evidence from which the existence of fraud might be inferred, as from any other fact. As such, the force of the presumption depends on the attendant circumstances. In this case the answer and exhibits explain fully the reason of the inadequacy of price complained of; they show that it was not induced by fraud, but by the doubts which rested on the titles to the property. The circumstance being thus recon-- ciled with perfect fairness and good faith, the presumption of fraud is utterly excluded. We are not aware, however, that the inadequacy of price has ever been held presumptive evidence of fraud in a public sale. Upon the soundest principles, such a presumption should not from that fact be entertained.

The answer denying the existence of the injunction is fully sustained by reference to the papers referred to in the answer, in case No. 1565, in this court. A copy of the bill in that case is filed with this brief for the convenience of the chancellor.

The writ of injunction has not been found, but neither the prayer of the bill, nor the fiat of the judge refers to the property in controversy in this case.

The answer of the defendant not only sweeps away every ground for the interposition of this court insisted on in the bill, but it goes further and shows by allegations fully sustained by proof, that complainant has no title, aside from the sheriff's sale, to either of the lots in controversy.

It is finally insisted that as the complainant is restrained from taking possession of lot No. 9, under his legal title, as complainant in writing agreed that the rents should abide the controversy about the title, as both complainant and defendant pray for the appointment of a receiver of rents, such receiver should be appointed.

WILKINSON & MILES contra.

This cause is now submitted on two motions made by defendant. 1st, to dissolve the injunction 2d, to appoint a receiver.

To say the least of them, there is a strange inconsistency in the two motions. If the injunction is dissolved, that puts an end to this controversy, and there is no necessity for a receiver. Should the motion to dissolve be overruled and the cause retained, then it is plain beyond controversy that Reynolds being in possession has the right to receive the rents, until evicted by title paramount.

No receiver is asked for by complainant. We were instructed not to ask for one. Defendant has no right to do so; and we will not discuss that motion any further.

The motion to dissolve the injunction demands a more serious consideration. The question presented by the bill and answer is one of grave importance to the community; one upon which rests the fate of a large number of titles to landed estates, in several of the most populous counties. While we are willing to admit, that considerations of public policy require of the courts to uphold and sustain judicial sales, we insist that in doing so the courts will never permit them to be used as engines of fraud and oppression. They will not permit their own process to be made use of by greedy speculators, and hungry record mongers, as a shield to protect them from the consequences of acts, which if performed without the sheltering power of legal process, would not bear a moment's investigation.

Upon principles of the soundest reason, it has long been held, that if the inadequacy of price in case of a sale made between parties standing on equal ground be so gross as to shock the conscience, or confound the judgment of a man of common sense, a court of equity will infer fraud, and rescind the contract. 2 Vesey, 516; 1 Bro. Cha. Rep. 9; 2 Ib. 179; 9 Vesey, 246; 16 Vesey, 517.

From these authorities it is plain that if Nye had purchased the lot in controversy for "five dollars" at private sale, (it being worth $8,000, according to the bill; and $5,000, by the admission of the answer,) the court would not hesitate a moment in declaring the contract fraudulent, and ordering the deed to be cancelled.

Although we concede, that the rule laid down does not in strictness apply to judicial sales; yet it is insisted that gross inadequacy of price, taken in connexion with very slight circumstances of fraud, will induce a court of equity to set aside a deed acquired at sheriff's sale. 7 Munroe's Rep. 612; 1 John. Cha. Rep. 502; 6

John. Cha. Rep. 411; 4 John. Cha. Rep. 118 & 228; 2 Litt. Rep. 118; 4 Cranch Rep. 403; 18 Wendell's Rep. 611.

Do not the facts of the present case bring it complete y within the rule of the last cases cited? That five dollars is a price grossly inadequate for property worth between five and eight thousand dollars is too manifest to require any thing but to be mentioned, in order to sustain it. Connected therewith the conduct of Nye throws around the transaction a shade of suspicion well calculated to show his sinister intention, notwithstanding his protestations of good faith and fair dealing. He admits he ordered out the execution, without authority from any one, and without the knowledge of the plaintiff.

Now it is insisted that no one, other than the plaintiff or his attorney, has any authority to order out an execution. By the older practice it required a mere warrant of attorney to enable counsel retained in a cause after judgment rendered to sue out execution. Besides, the books, in speaking of executions, all say the plaintiff may sue out execution.

If the plaintiff does not wish to run his execution, surely no one else can claim to do so for him. The judgment is his, and it is his privilege to manage it as he chooses. Again: the judgment may be satisfied, although not so returned by the sheriff. Payment may have been made by the defendant directly to the plaintiff; or the judgment may have been released; or collaterals may have been placed in the hands of the plaintiff, who surpended the judgment till their efficacy could be tested. Nye, who was the second indorser and the third party liable, had no right to presume he would be called on to pay the money until demand made, or until the proper affidavit was filed. Besides, he knew he never would be called on to pay it—for no one knows better than himself that an undivided moiety of about thirty negroes now in controversy in this court, in the case of Briggs, Lacoste *et al. v.* James R. Creecy *et al.*, No. 1565; is liable for the payment of this judgment.

Notwithstanding Nye denies any intention of committing fraud, yet the confessions in his answer show most conclusively that his acts amount to fraud, and he will be compelled to abide the penalty.

The CHANCELLOR.

This case was submitted, at the late sitting, upon motion to dissolve the injunction upon bill, answer and exhibits. The bill states, that on the 12th of May, 1840, the complainant became the purchaser of lots No. 9 and 147, in the city of Yazoo, at a sale made by virtue of a deed of trust from one James R. Creecy to Charles E. Mount. That there was an old judgment in favor of Jordan & Smith against the said Creecy and the defendant Nye, upon which there was but a small balance due, and upon which said Nye fraudulently, and for the purpose of purchasing in said lots for a mere trifle, caused an execution to be issued and levied thereon, and at the sale became himself the purchaser for five dollars each. That the lots were worth at the time of the sale eight thousand dollars. That Nye, although one of the defendants in the judgment, took out the execution himself, and assumed the control thereof, without the assent of the plaintiffs thereto. That Nye has instituted an action of ejectment upon the title thus obtained, against which the bill prays for a perpetual injunction and a rescission of the sale, or such other relief as may be consistent therewith.

The defendant denies that he was guilty of any fraud, and says it is true that he sued out the execution as charged by the complainant, but that he was a mere surety to Creecy, the other defendant therein; and that his purpose, in part, was to indemnify himself against that liability. That it is also true that he purchased the lots at five dollars each, he being the only bidder. He accounts for this sacrifice of the lots by stating that the title was in a confused and embarrassed condition.

It is apparent from this statement of facts, that the motion to dissolve involves an examination of the principal merits of the case. The first thing that suggested itself to my mind, upon looking into the case, was a doubt, whether the complainant's relation to the property in question was such as entitled him to question the validity of the sale under which the defendant claims. A little reflection, however, and some examination of authorities, has removed all doubt on that score. The complainant derived title, under Creecy, before a sale under the judgment against him

was made to the defendant; equity will therefore consider him, in respect to these lots, as standing in the place of Creecy, and entitled to all his remedies. Dust *v.* Conrod, 5 Munford 411.

I think it at least clear upon the facts of the case as they now stand, that the complainant would, on final hearing, be allowed to set aside the sale upon paying the defendant the amount of his bid, and satisfying the remainder of the judgment under which the sale was made. This was the view of chancellor Kent under a case not very unlike the present. Howell *v.* Baker, 4 John. Ch. Rep. 117. It appears that the judgment was originally for eight hundred and seven dollars forty one cents, but at the time of the sale the execution stood credited with seven hundred and ninety-five dollars and seventy-five cents, thus leaving a very small balance due. The very fact that two lots estimated at from five to eight thousand dollars were levied on for so small a sum, was a gross abuse of power on the part of the sheriff, and was of itself sufficient to throw doubt and suspicion upon the transaction, and to deter those who were present at the sale from bidding. It is not to be supposed, at a fair sale of property worth eight thousand dollars, that it would only bring ten dollars, unless the minds of the by-standers had been in some way misled in respect to either the title, value or condition of the property. This was truly an inequality "so strong and manifest as to shock the conscience and confound the judgment of any man of common sense."

It is true that inadequacy of price creates a mere presumption of fraud, and that that presumption does not, from that circumstance alone, attach to judicial or other sales made at auction; but it may, connected with other facts, be evidence of fraud even in such sales. The defendant states that he was desirous of purchasing the lots that he might have some indemnity in his hands against liabilities he had incurred for the principal defendant in the judgment. If he expected to purchase the property at a fair price, it is difficult to see how it was to be made the subject of indemnity to him. He admits that the lots were levied on at his instance and by his direction. That levy was excessive and oppressive, and as it was made at the instance of the defendant, who purchased under it, I think that circumstance, connected with the

gross inadequacy of the sum paid, render the validity of the sale extremely questionable, unless it is protected by having been made under an execution. I perceive no reason founded in considerations of public policy which should prevent a court of equity from setting aside a sale made under execution where it is tainted with fraud or infected with other vices which render it inequitable that it should stand. It is of the utmost importance that such sales should be conducted with perfect fairness and with a view equally to the rights of the debtor and creditor.

In the case of Knightly v. Birch, 3 Camp. Rep. 520, it is said, where a sheriff finds that property which he exposes to sale is about to be sacrificed, he should return that it was not sold for the want of bidders, and wait for a *venditioni exponas*. The rule thus laid down is sustained by the plainest principles of justice. The duties of a sheriff do not require him to make a sacrifice of the debtor. Every consideration of justice requires that he should exercise a sound discretion, and deal with equal partiality between the debtor and creditor. It is true, that mere irregularities or misconduct in the sheriff would not, in general, affect the validity of the sale, unless the purchaser was advised of them, and in some way participated therein.

In this case, Nye himself directed the excessive levies under an execution which he had sued out, from a judgment to which he was himself a party defendant. This circumstance was of itself sufficient to throw a suspicion of unfairness over the whole transaction. It is essential to a pure administration of the law, that the time and mode of enforcing the collection of a judgment should be left exclusively to the discretion of him to whom it of right belongs. It is indispensable to the protection of the rights of the plaintiff in such case, that the course of the execution should be under his own control. Any other practice might lead to the greatest fraud upon the judgment creditor. It is true, the defendant says he had the sanction of the plaintiff's attorney; but it may be doubted whether even an attorney has the power to place the judgment of his client under the control and at the mercy of the defendant in that judgment. But it is unnecessary that I should make any decision upon this point.

I am of opinion that all the circumstances of the case taken together, if unexplained, show such unfairness as should induce the court, upon final hearing, to set aside the sale, upon the complainant paying the balance of the judgment under which it was obtained.

Let the motion to dissolve be overruled.