UNITED STATES (DRAYTON v.). See Case No. 4,074.

## Case No. 14,992.

UNITED STATES v. DRENNEN et al.

[Hempst. 320.] [1]

District Court, D. Arkansas. March, 1845.

EXECUTION—FEDERAL JURISDICTION—ADMINISTRATORS — ASSETS — PROPERTY OF DECEASED PERSONS.

1. Suits may be brought in the courts of the United States against executors and administrators, and judgments rendered against them in their representative capacity, and executions issued against the property of the estate unadministered, and a sale thereof, whether it be lands, slaves, or goods and chattels, will pass a valid title to the purchaser.

2. Every court must necessarily possess the power of executing its judgments and decrees.

3. The judiciary act of 1789 [1 Stat. 73] expressly provides for rendering judgments against the estates of deceased persons, and also for issuing executions on all judgments rendered in the courts of the United States.

4. The jurisdiction of the courts of the United States is derived alone from the constitution and laws of the United States, and cannot be enlarged, diminished, or affected by state laws or regulations. [Robinson v. Campbell] 3 Wheat. [16 U. S.] 221; [The Orleans v. Phoebus] 11 Pet. [36 U. S.] 175.
[Cited in National Bank of Western Ark. v. Sebastian Co., Case No. 10,040.]

5. By the laws of Arkansas, goods and chattels, credits and effects, lands, tenements, and slaves are assets in the hands of an administrator for the payment of debts.

6. Judgments may be rendered de bonis testatoris under these laws, and executions issued against the estate of the intestate, and the same sold to satisfy the execution.

7. Where property will be sacrificed, the officer should not sell, but wait for a venditioni exponas.

8. See notes, as to sale of property of deceased persons on judgments and execution.

Petition to quash execution:

"District of Arkansas—sct. To the Hon. Benjamin Johnson, Judge of the District Court of the United States in and for the District of Arkansas: Your petitioners, John Drennen and Elias Rector, as administrators of all and singular the goods and chattels, rights and credits of Wharton Rector, deceased, respectfully represent, that heretofore, namely, on the 12th day of October, A. D. 1844, the United States, by the consideration and judgment of the district court of the United States for the district of Arkansas, recovered against your petitioners, as and in their capacities of administrators as aforesaid, the sum of seven thousand five hundred and twenty-five dollars and ninety-one cents, which were adjudged to them for their damages, with interest on said damages at the rate of six per cent. per annum from said 22d day of October, 1844, till paid, together with the sum of fifty-five dollars and fifty-one cents for costs sustained in said suit, which by the record thereof remaining in said court more fully appears. Your petitioners further represent, that afterwards,

[1] [Reported by Samuel H. Hempstead, Esq.]

namely, on the fourth day of March, A. D. 1845, said United States, for having execution of said judgment, sued out of the office of the clerk of said court a certain writ of fieri facias, directed to the marshal of said district, by which said writ said marshal was commanded that of the goods and chattels and slaves, lands and tenements of the said intestate Wharton Rector, at the time of his death, he should cause to be made the damages and interest aforesaid, together with the costs aforesaid, so that he should have the same before the clerk of said court at his office in the city of Little Rock on the first Monday of April next, to be paid over to said plaintiffs; which said writ afterwards came to and is now in the hands of said marshal, who has, by virtue thereof, levied upon and advertised that the following described lands and tenements, situated in Rector town, Pulaski county, in the district aforesaid, namely, lots 4, 5, 6, 7, 8, 9, 10, 11, and 12, in block or square No. 6; fractional block No. 5, consisting of lots 1, 2, 3, 4, 5, and 6; fractional blocks 12 and 13; blocks No. 8 and 9; fractional blocks 3 and 4, and block No. 16, will be sold on the 29th day of March, 1845, to satisfy said writ of fieri facias; all which by a copy of said writ, with the marshal's certificate thereon, herewith exhibited, marked A, and to be taken as part hereof, will more fully appear. And your petitioners submit and insist, that by the law of the land, no writ of execution could issue against them, as such administrators, upon said judgment. Your petitioners therefore pray your honors to supersede, quash, and set aside said writ of fieri facias, together with all the proceedings had under and by virtue thereof. And your petitioners will ever pray, &c. John Drennen and Elias Rector, as Administrators of Wharton Rector, Deceased."

Exhibit A. "United States of America, District of Arkansas — sct. The United States, to the Marshal of the Arkansas District, Greeting: Whereas, the United States, on the 12th day of October, A. D. 1844, in our district court of the United States for the district of Arkansas. hath recovered against John Drennen and Elias Rector, administrators of the estate of Wharton Rector, deceased, the sum of seven thousand five hundred and twenty-five dollars and ninety-one cents (say $7,525.91), which were adjudged to them for their damages, with interest on said damages at six per centum per annum from the said 22d day of October, A. D. 1844, till paid. together with the sum of fifty-five dollars and forty-one cents for costs sustained in the suit. You are therefore commanded, that of the goods and chattels and slaves, lands and tenements of the said intestate Wharton Rector, at the time of his death, you cause to be made the damages and interest aforesaid, together with the costs aforesaid, so that you have the same before the clerk of our said court at his office in the city of Little Rock on the first Mon-

day of April next, to be paid over to said plaintiff, and then and there certify how you have executed this writ. In testimony whereof, Benjamin Johnson, Esq., judge of our said court, hath caused the seal of said court to be hereto affixed this fourth day of March, A. D. 1845, and the sixty-ninth year of American independence. Wm. Field, Clerk. (Attest) By A. H. Rutherford, Deputy Clerk."

"I, Henry M. Rector, United States marshal in and for the district of Arkansas, do hereby certify that the foregoing is a true copy of the execution now in my hands in the cause therein mentioned, and that I have levied said execution upon lots 4, 5, 6, 7, 8, 9, 10. 11, and 12, in block or square No. 6; fractional block No. 5, consisting of lots 1, 2, 3, 4, 5, and 6; fractional blocks 12 and 13; blocks No. 8 and 9, fractional blocks 3 and 4, and block No. 16,—all in Rector town, Pulaski county, Arkansas. And I do further certify, that I have advertised that said parcels of land would be sold, to satisfy said execution, on the 29th day of March, 1845. Given under my hand this 13th day of March, 1845. Henry M. Rector, U. S. Marshal, District of Arkansas."

Written notice was served on S. H. Hempstead, attorney for the United States for the district of Arkansas, on the 13th of March, 1845, that the above petition would be heard before the Hon. Benjamin Johnson, district judge, at chambers, on the 14th of March, 1845; at which time the matter of the petition was argued by George C. Watkins for the petitioners, and S. H. Hempstead, district attorney, for the United States, who admitted the facts stated in the petition to be true. The application was denied on the merits, but no written opinion was delivered at the time. Subsequently the following was written.

OPINION OF THE COURT (JOHNSON, District Judge). This was an application to quash an execution issued on a judgment obtained by the United States against John Drennen and Elias Rector, administrators of Wharton Rector, deceased, in the district court of Arkansas, on the 22d of October, 1844, and also to quash and set aside all the proceedings under the execution. The judgment substantially pursues the English form, and is against the petitioners in their representative capacity, and its language is that the moneys therein adjudged be "levied of the goods, chattels, slaves, lands, and tenements which were of Wharton Rector at the time of his death, and remaining in their hands to be administered." The execution pursues the judgment, and both are correct as to form and substance. The marshal levied, among other real property, on blocks eight and nine in Rector town, on which there are costly and valuable improvements, as the property of Wharton Rector, deceased, and, it is alleged, has advertised and will

proceed to sell the same, unless prevented from doing so. The application was over-ruled, on the principal ground that this court had a right to execute its judgments; but no reasons were given at length. As it was a question of interest and considerable diffi-culty, and time was not then afforded to examine it as fully as it deserved, I have since done so, and am confirmed in the cor-rectness of my decision, and will now pro-ceed to give briefly my reasons for it.

The ground upon which the execution was sought to be quashed was, that in view of the law of the state, none could be issued against administrators; and it was insisted by the counsel for the petitioners, that a judgment against an administrator must be filed in the probate court, according to the laws of Ar-kansas, classed and satisfied out of the as-sets of the estate in the regular course of administration, in full if the estate was sol-vent, and pro rata if insolvent, and that to allow an execution to be issued and levied on the assets of the deceased, and have them sold, would disturb the course of administra-tion, and enable one creditor to obtain an advantage over another, when they should all be on an equal footing. This is a question of delicacy and difficulty, and may in many instances in its practical results produce con-flicts of authority between the federal and-state tribunals, always to be avoided if prac-ticable. But the jurisdiction of this court is clear, and cannot be surrendered. By the judiciary act of 1789 [1 Story's Laws, 56, § 9], the district courts have cognizance of all suits at common law, where the United States sue, and the matter in dispute exclusive of costs, amounts to the sum or value of two hundred dollars. And by the act. of 3d March, 1815 [3 Stat. 244], the jurisdiction of the dis-trict and circuit courts is extended to all suits at common law in which the United States, or any officer thereof, under the authority of an act of congress, shall sue, irrespective of the amount in controversy. [1 Stat. 76.] There is no defect in jurisdiction, unless it springs from inability to sue executors and administrators at all. Now that power is clearly vested in the courts of the United States, because the act of 1789 adverted to, expressly provides for rendering judgments against the estates of deceased persons. Gord. Dig. 687. And the same act provides for the issuing of executions on all judg-ments rendered in those courts. [Ross v. Du-ral] 13 Pet. [38 U. S.] 60. Besides, the re-ports of the courts of the United States fur-nish ample evidence of the constant practice of bringing suits against executors and ad-ministrators, and to cite these cases would be a work of supererogation, because it would be to demonstrate what cannot be denied. Nor does it seem to have been thought, in any instance, that judgments thus rendered could not be executed; and certainly an ex-ecution is necessary to the beneficial exercise of the jurisdiction. An execution is said to be the end of the law, and it gives to the suc-cessful party the fruits of his judgment. [U. S. v. Nourse] 9 Pet. [34 U. S.] 8. If a court is competent to pronounce judgment, it must be equally competent to issue execution to obtain its satisfaction. 8 Wheat. [21 U. S.] 106. A court without the means of execut-ing its judgments and decrees, would be an anomaly in jurisprudence, not deserving the name of a judicial tribunal. It would be idle to adjudicate what could not be executed; and the power to pronounce necessarily im-plies the power of executing. Congress has the constitutional power to carry into effect all judgments which the judicial department has power to pronounce. Wayman v. South-ard, 10 Wheat. [23 U. S.] 1; Bank of U. S. v. Halstead, Id. 51. And as we have already seen, that power has been exercised in the act of 1789, by expressly authorizing writs of execution to issue on all judgments which the courts of the United States may render.

The jurisdiction of the courts of the United States is derived alone from the constitution and laws of the United States, and cannot be enlarged, diminished, or affected by state laws or regulations. Ex parte Cabrera [Case No. 2,278]; Livingston v. Jefferson [Id. 8,411]; [Wayman v. Southard] 10 Wheat. [23 U. S.] 1, 51, 61. Nor can the local laws of a state confer jurisdiction on the courts of the Unit-ed States. They can only furnish rules to ascertain the rights of parties and thus assist in the administration of the proper remedies, where the jurisdiction is vested by the laws of the United States. [The Orleans v. Phoe-bus] 11 Pet. [36 U. S.] 175. To allow state laws to affect or impair the jurisdiction of the federal courts, or to arrest the remedies in those courts, would be to virtually abolish them at pleasure. Even then, if it were true, that by the laws of Arkansas a judgment against an administrator cannot be executed or enforced otherwise than by an application to the probate court, it could have no effect in this forum, because, as we have seen, the right of rendering judgments and issuing ex-ecutions thereon, against the representatives of deceased persons, is clearly conferred on the courts of the United States by acts of congress. and must necessarily supersede any state regulations in conflict with them. The laws of the several states only become rules of decision in trials at common law in the federal courts, in cases where they apply, and where the constitution, treaties, or stat-utes of the United States do not provide a different rule. 1 Stat. 92; [Livingston v. Story] 11 Wheat. [24 U. S.] 361; [Green v. Lessee of Neal] 6 Pet. [31 U. S.] 291; U. S. v. Duncan [Case No. 15,003]. But the posi-tion is not sound; because there is nothing, as I can perceive, in the laws of Arkansas forbidding the execution of a judgment against an administrator in his representative capacity. On the contrary, it would appear to be allowable, because the right of the cir-cuit courts to pronounce judgments de bonis

testatoris is clearly inferable from the provisions of the statute authorizing actions pending against the deceased to be revived against his representative; and also actions generally to be instituted against executors and administrators, in the circuit courts, after the death of the intestate or testator. Rev. St. 81. And then steps in the eighth section of the execution law, which provides, in substance, that when an execution shall be issued against any person as heir, devisee, executor, or administrator, the officer to whom the same shall be directed shall be commended, that of the goods and chattels which were of the ancestor, testator, or intestate at the time of his death, he cause to be made the debt, damages, and costs; for want of goods and chattels, then, real estate which was of the deceased at the time of his death, must be seized to satisfy the execution. Rev. St. 375. It is very clear from this section, that an execution may be issued de bonis testatoris, and of course the property of the deceased levied on and sold. And lands and slaves of the deceased may be sold as well as personal property.

There does not appear to me to be any conflict in the provisions of the administration law and the last quoted provision. Such a construction should be given as that the whole may stand and be effectual. The administration law should doubtless be construed as giving two remedies; one cheap, simple, and expeditious· that is to say, by applying to the administrator or probate court, for the allowance and classification of the claim, and having an order for its payment, either partly or entirely, according to the condition of the estate; the other, more expensive and less expeditious, namely, by bringing an ordinary suit at law in the common law courts, obtaining judgment and execution de bonis testatoris,[2] and which are not affected by the insolvency of the estate, provided there are goods and chattels, lands and tenements, or slaves sufficient to satisfy such debt, remaining unadministered. Whichever remedy a party adopts, he must of course take it subject to all the conditions and limitations peculiar to the particular forum he seeks.

But it is insisted that death has the effect of withdrawing the assets and property of the deceased, of every description, from the influence of an execution, and placing all with-

in the exclusive control of the probate courts. I do not so read the statutes of Arkansas. If that were true, the provisions above quoted authorizing suits against executors and administrators, and executions to issue against the property of the deceased would be nugatory, and would stand a dead letter on the statute-book. Besides, it is well settled that if land be levied or in the lifetime of the judgment debtor, the sale may proceed after his death. The levy upon the property places it from that time forward in the custody of the law, for the payment of the judgment, and although the judgment creditor does not thereby become the owner, yet the levy may be said to vest in him an interest, or give him a lien not affected by the death of the judgment debtor. Certainly death does not withdraw it from the custody of the law. Massie v. Long, 2 Ohio, 290; Buckner v. Terrill, Litt. Sel. Cas. 29; Sumner v. Moore [Case No. 13,610].[3] Putting the statutes aside, then, here is a case where the property would not be withdrawn from the influence of an execution; and, indeed, the fallacy of the argument is too obvious to need further criticism. and is not sustained by authority.

The law, in allowing judgments and execu-

[2] In Ryan v. Lemon, 2 Eng. [7 Ark.] 79, decided by the supreme court of Arkansas in 1846, the same distinction is substantially enunciated. It was there held that in the collection of claims against the estates of deceased persons, claimants may proceed by action according to the forms of the common law, or before the probate court, in the summary manner prescribed by the administration law; and that if the former is adopted, it must be subject to the qualifications imposed by legislative enactment. And the different provisions with regard to bringing suits against executors and administrators and presenting claims, were discussed and construed.

[3] A fieri facias being issued upon a judgment, was levied on land, and the judgment debtor died. Without reviving the judgment by scire facias a venditioni exponas was issued after his death, and the officer under it sold the land thus levied on; and it was held that the sale was valid, and conferred a good title on the purchaser. Taylor v. Doe, 13 How. [54 U. S.] 287. The court said, "We regard the venditioni exponas merely as a continuation and completion of the previous execution, by which the property had been appropriated, and was still in the custody of the law." A sale under execution without revival of the judgment is not absolutely void, but voidable only, and cannot be avoided collaterally. [Pollard v. Files] 2 How. [43 U. S.] 602; [Taylor v. Benham] 5 How. [46 U. S.] 253; 9 Smedes & M. 216. A sale made under execution, tested and issued after the death of the defendant therein, and without a revival of the judgment, is voidable, but not void. The sale is good until set aside by a direct proceeding, and cannot be attacked collaterally. Shelton v Hamilton, 1 Cushm. (Miss.) 496. A sale of lands under a judgment against an executor de bonis testatoris conveys a good title to the purchaser, and the title of the heirs is thereby divested. Worthy v. Hames, 8 Ga. 234. The acts of congress (3d March, 1797, § 5, and 2d March, 1799. § 65) giving priority to debts due the United States, control all state laws for the distribution of estates of deceased persons. 1 Stat. 515, 676. The law makes no exception in favor of a particular class of creditors, and the priority of the United States does not yield to the claims of any creditors, however high may be the dignity of their debts. U. S. v. Duncan [Case No. 15,003]. Almost every state or sovereignty makes itself, by its own legislation, a preferred creditor, as to debts that may be due to it. Such was the Roman law, and such is the law of England. Statutes giving the government a priority are presumed to be for the public good, and are for that reason to be liberally construed in favor of the sovereign. [U. S. v. State Bank of North Carolina] 6 Pet. [31 U. S.] 29; [Beaston v. Farmers' Bank of Delaware] 12 Pet. [37 U. S.] 134.

tions against the estates of deceased persons, established no new and unheard of doctrine; but rather carried out an ancient rule; because the common law of England enforced claims against estates, by means of judgments and executions de bonis testatoris. Real estate was not subject to sale under execution in any case, against the living or the dead, because it was held to be against the policy of their peculiar system of government. Nor were lands there, as here, assets in the hands of the administrator for the payment of debts. Slaves were neither subject to execution, nor assets in the hands of an administrator, because slavery did not and does not exist in England. But goods and chattels which were assets, were subject to execution, seizure, and sale for the debts of the intestate as long as they remained in the hands of the administrator in specie unadministered; and they were so considered until actually sold and applied to the payment of debts. And this, notwithstanding the general subject of administration, was under the authority and jurisdiction of the ecclesiastical courts; and notwithstanding, too, a scale of priority was established and fixed by law among creditors. Toll. Ex'rs, 258. The case of Mara v. Quin, 6 Term R. 5, shows that a debt may be levied of the assets of the deceased in the hands of the executor to be administered. 2 Saund. 219a, note 2. And several cases in state courts are to the same effect. Mitchel v. Lunt, 4 Mass. 654; McCormick v. Meason, 1 Serg. & R. 92; Prescott v. Tarbell, 1 Mass. 204; Weeks v. Gibbs, 9 Mass. 74; Clark v. May, 11 Mass. 233. It is only necessary to ascertain what are assets, because if by the common law goods and chattels might be taken on execution on account of their being assets and unadministered, so here lands and slaves may be taken and sold, if assets by our laws, which they certainly are. Now the law of Arkansas destines the property of the deceased, real, personal, and mixed, to the payment of debts. Real estate, slaves, personal chattels, rights and credits, and property of every nature and description, are declared to be assets for that purpose.[4] Everything is surrendered, nothing withheld. The administrator represents the intestate; and although it is true that by means of an action and judgment de bonis testatoris, the issuing of execution thereon, and levying on and selling specific property of the deceased, unadministered, subject to execution, one creditor may obtain an advantage over another, yet this results from the favor which the law extends to the vigilant creditor. One creditor may obtain priority over another and have his debt satisfied, to the exclusion of others, who, owing to the exhaustion of

property, may get nothing, or only partial satisfaction. But this is no greater hardship than may and in fact constantly does occur between the living, because one creditor, by his activity and vigilance, may clothe himself with the right of judicially appropriating sufficient property of the defendant to satisfy the debt, and which may be his entire property, thus shutting out all other claims and debts, and leaving them unpaid. It is difficult to perceive, on principle, why vigilance should not reap its appropriate and accustomed reward, as well after as before the death of the debtor.

It is insisted, that to allow the property of a deceased person to be sold on execution, would be likely to produce a sacrifice of it. But I am not able to perceive why there would be any greater sacrifice than in any ordinary judicial sale. The sale must be public, and every one would have equal opportunities of purchasing; and if the marshal was satisfied that combinations existed to produce a sacrifice, or, owing to other causes, that it would fall so far below its real value as to warrant him, in the exercise of a sound discretion, to return the property unsold for want of bidders, he might, although possibly not absolutely bound so to do, take that course, as in ordinary cases, and wait for a venditioni exponas, and under which he must sell. 3 Camp. 521, 2 Cow 185; 1 Freem. Ch. 470. Allowing, however, the objection in its fullest force, it could not affect the question of power, and would only be a circumstance connected with its expediency, and therefore to have no controlling weight. In this case it appears that the marshal has levied on the lands of the intestate, and as every officer is presumed to do his duty, it must be taken as at least prima facie evidence that sufficient goods and chattels could not be found whereon to levy the execution, and therefore that it was necessary to seize and sell the lands. But even if there was in fact sufficient personal property, still the sale would not be invalid, nor would the title of the purchaser be affected, as the command to take personalty first is merely directory to the officer. 7 Eng. [12 Ark.] 272, 273. And for any omission of duty in that respect, he would be responsible for whatever damage might accrue to the estate; but the sale would be good. 3 Bibb. 219; 3 A. K. Marsh. 281; 4 T. B. Mon. 474; 5 Blackf. 590; 6 Wend. 523.

On the whole, I am clearly of opinion that this application ought to be refused, and that the plaintiffs have a right to proceed to a sale of the property. Petition refused.

NOTE. In Adamson v. Cummins, 5 Eng. [10 Ark.] 541, decided by the supreme court of Arkansas in 1850, it was said that our statutes certainly recognize the right of the circuit court to render judgments de bonis testatoris, else why permit any action pending against the deceased at the time of his death to survive and be revived against his executor, or why the recognition of the right to commence actions

---

[4] Menifee v. Menifee, 3 Eng. [8 Ark.] 47, 48 (decided in 1847), holds that lands and slaves are assets in the hands of the administrator for the payment of debts, and he entitled to the rents and profits and the possession thereof.

generally against executors and administrators after the death of the testator or intestate, or why make provisions touching the conduct of such suits, and the character and effect of judgments in such cases? And it was also said that the 8th section of the statute of executions was an express recognition of the right of the circuit court to issue executions de bonis testatoris; and moreover, that the right of the circuit courts to execute their own judgments was, upon general principles, clearly maintainable, and that all the analogies of the law were in favor of it. But the court held that an execution which was levied on the slaves of the intestate merely, was irregular, not void, and was quashable by the administrator after sale; but that the purchaser, without notice of the irregularity, would hold the property purchased, and that the sale would not be set aside. The lands of a deceased debtor may be seized on execution and sold, under a judgment rendered against the executors of such deceased debtor for a debt due from him. Landes v. Perkins, 12 Mo. 260; Landes v. Brant, 10 How. [51 U. S.] 376.