Taylor, Chief-Justice.
 

 A verdict was found in this case for the Defendant, and a motion for a new trial made on the part of the Plaintiff) on the ground of mis
 
 *332
 
 direction : this was overruled, and he has appealed, The proceedings which were had before the Justice, and * «p » in tiie County Court, under which the Plaintiff derives jjjs are made part of the record; and several exceptions are made to them- which it is first necessary to
 
 examine;
 
 since, if it shall appear that the Plaintiff’s title is legally defective, it would be worse than useless to award a new trial.
 

 The first exception is, that the levy on the land bears date 27th February, 1809, and that the judgment and levy were returned to the County Court on the same day, which was the first day of the session, in violation of the act of' 1794, sec. 19, which requires the return to be made to the
 
 next
 
 Court of the County. But an attentive view of the act will shew,' that its design was to give the Plaintiff as quick a remedy against the land as could be had, consistently with the ceremony .it prescribes of obtaining an order of sale from the Court, and to avoid the intervention of a session, or the day of a session, between the levy and the return to Court. The proceeding is
 
 ex parte
 
 in its nature, the Defendant having no day in Court 5 and no possible inconvenience can arise from returning the levy during the sessions, on one day of which it may happen to have been made : it is
 
 the. first
 
 Court after the levy is made, and the meaning of the law is, the next Court, when there is an opportunity of making the return, — On the other hand to pass over the sessions because a levy was made on one day of it, might operate as an injurious delay to a Plaintiff whose judgment may have been already stayed, as it was in tliis case, for six months, and might further have a tendency to perplex titles by dormant liens, it therefore seems to me that the law would not be rightly construed, unless February sessions were considered the next Court in relation to this levy.
 

 It is objected in the next place, that there was
 
 no order of sale.
 
 But an inspection of the record will shew
 
 *333
 
 that there was an order of sale. A
 
 venditioni exponas
 
 was moved for by the Plaintiff’s attorney^ which was granted by the Court, and then a writ issued in the following words — “ ordered by the Court, that so much of the lands of Ezekiel Bowen and Burgess Stone, already executed by' the constable, be sold, Ac.” The order of sale, and the {taper called a
 
 venditioni exponas,
 
 are blended together j but the order of sale was nevertheless made, and the Clerk of the County Court certifies that the transcript is a copy of the proceedings had in that Court, from which it may be concluded that the
 
 venditioni expo-nas
 
 was first entered on the minutes, and a copy then issued to the Sheriff to authorize him to sell.
 

 The proceeding might have been more formal, but it is right in substance.
 

 It is said that the
 
 venditioni exponas
 
 was returned on the first day of the session, and the sale took place after-wards, whereby it is void. With respect to an execution against chattels, if a sheriff has levied in due time, he may complete the levy by a sale after the return day, though he cannot levy after that dry : whether he may-sell land after the return day, a levy being made before, is a question not necessarily presented in the case, and one on which I give no opinion. The return of the execution is collected from the record which states it to have been made on the first day of the'session, and that it was returned satisfied by the sale of laud. Is this true or not ? If it be' true, the sale was within time, for- the day on which an execution is returnable, is the utmost time allowed by the law to execute it. But the case states that the sale was made on the second day of the Courtj and assuming that to be the fact, it is impossible that an execution could have been returned on the preceding day,, Pled by a sale of land which had not then taken place. fair and unavoidable conclusion therefore, is, that the entry was so made by the Clerk, in compliance with Hie fiction that the sessions consist of one day, and tlm
 
 *334
 
 whatever is transacted during the session, is referred to' the fsrst day of it, in legal contemplation: in strictness, an execution is returnable the first day of the sessions. tliottg-l) there is no act of Assembly which' makes it imperative on the Sheriffto return it on that day. It is true that the Plaintiff may call upon the sheriff, and obtain a rule against him to return his
 
 writ;
 
 but if he fails so to hasten him, it is understood by every one that the return of an, execution during the session is sufficient ¿ and on whatever day it is made, it is constantly and uniformly in legal parlance referred to the first day. I will go one step farther and say, that the practice of selling land upon execution after the first day of the sessions has prevailed so extensively, and for so great a length of time, that to call it now in question, would shake a very large proportion of the titles in the State.
 

 Another exception is, that the execution is
 
 not directed.
 
 The answer is, the warrant has the usual direction, and the execution being on the same paper, has virtually the same direction, viz. “ to any lawful officer, Ac.”
 

 It is further objected that the execution of the Justice is issued against goods and chattels, lands and tenements, whereas it ought to have issued against the
 
 goods
 
 only, according to the act of 1794. The execution is certainly not in the precise form required by that act, but the return of the constable corrects the irregularity, and renders it harmless. By his return he has done, not so much as the execution required him to do, but only what the law directed, viz. to levy upon land in default of chattels. Allowing, however, all possible strength to these objections, they are informalities merely, and cured by the 16th section of the act of 1794.
 

 Another exception to the proceedings, is, that the execution under which the land was sold is not made
 
 burnable to any given time.
 
 It is, however, as a mfüMr of course, returnable at the next sessiohs, and being merely an authority to the sheriff to sell, he might be
 
 *335
 
 called upon to shew how he h;id executed it. The reason of the different rules applicable to the
 
 capias
 
 in
 
 mesne
 
 process and a
 
 capias
 
 in
 
 execution,
 
 shews that it is not essential to its validity that a return day should be specified in the writ.
 

 In
 
 mesne
 
 process, if a term be omitted, the writ is void in all actions personal, and tha sheriff shall not be charged, because the party not having a day in Court as he ought by the return of the writ, may be injured in the mean time.
 

 But in
 
 executions,
 
 a
 
 ca. ta.
 
 omitting a term is not void
 
 ;
 
 for the party is not to have a day in Court $ his cause is at an end, Rnd he must be in prison, whether the writ be returned or not, nor is it necessary it should be re
 
 turned
 
 — (3
 
 Salk. TOO.)
 

 The x’emaining objection is, that the return on the execution is signed by the
 
 deputy sheriff.
 
 The answer to this is, that the deed was made by the high sheriff, who can take notice of the act of his deputy in selling the land and ratify it by making a title to the purchaser; a title thus consummated cannot be impaired by the return on an execution. The case of
 
 Smith
 
 v.
 
 Kelly,
 
 in this Court, was stronger, for there the deed was by the sheriff to one person, whereas the return stated that a different person became the highest bidder.
 

 As to the objection made to tifie Plaintiff’s title at the trial on the score of
 
 fraud,
 
 the various circumstances adduced in evidence and relied upon, were proper to be considered by the Jury ; and whatever conclusion they might draw from them ought to remain undisturbed by the Court. It is possible that the Jury were convinced by that evidence the Plaintiff’s title was founded in fraud ; and could we be assured that the conclusion was thus derived, we must let the verdict stand. But as it is also possible that the Jury were influenced by the instruction of the Court, to find against the Plaintiff, it is our duty to consider whether such instruction was correct in point of law. And I cannot subscribe to the doe-
 
 *336
 
 trine that the Plaintiff
 
 knowing
 
 there was personal property sufficient or nearly so to satisfy the execution, and the Plaintiff’s permitting the constable to return that t!ici*e was no personal property, and to levy on the land, &c. amounts to a fraud in law. I think there must he something beyond a knowledge and permission of those things ; there must be a direction or active interference to make the Plaintiff a party to the fraud. The officer is not the agent of the Plaintiff, but of the public, and is responsible to any one who may be injured by his disobedience of the law prescribing his duty. It is not sufficient to invalidate the Plaintiff’s title that he knew there was personal property sufficient, and with this knowledge passively allowed the sale of the land, but he must have been an actor and participator in the irregularity of the officer. To render a purchase at a sheriff’s sale, though he be the Plaintiff in the execution, chargeable with the irregularity of the officer, because the purchaser knew and permitted it, is. to extend the doctrine beyond the cases cited, in both which, the attornies sued out irregular writs and procured the wrong to be done. Finally, if it had been left to the Jury to consider from all the circumstances in this case, whether Lanier had taken an active share in the irregular levy and sale, the Court could not have interfered with the verdict; but for the reasons before given, I think there ought to be a new trial.