## Childs & Co. *versus* Dilworth & Bidwell.

*Lien of Execution.—What acts of Plaintiff amount to Abandonment of.*

1. A sheriff who was directed by the attorney of the plaintiffs in an execution first to exhaust the personal property of the defendants, and then resort to the real estate, by mistake levied on and advertised the real estate first, and then learning that there was personal property, levied on and sold it. *Held*, that the prior levy on and advertisement of the real estate was not an abandonment of the lien of the prior execution on the personal property.

2. Where one of the plaintiffs desired the sheriff to postpone the sale of the personal property until after that of the real estate, which the sheriff refused to do, postponing the advertisement of the personalty for one day only, and then proceeded to sell; the plaintiffs' priority of lien was not destroyed.

3. The lien of executions attaches to personal property in the order in which they are delivered to the sheriff, though not all be levied and inventoried (or scheduled) under the prior writ; and the fact that previous execution-creditors contest an adverse claim to a part of the property levied on, is no reason for awarding the proceeds of that property when afterwards sold by the sheriff to the junior creditors alone, who contested the interpleader suit.

APPEAL from the District Court of *Allegheny county*.

This was an appeal by H. Childs & Co., from the decree of the court below, distributing the proceeds of the sheriff's sale of certain personal property levied on and sold on an execution against the firm of Porter, Rolfe & Swett.

[Childs & Co. *v.* Dilworth & Bidwell.]

The material facts of the case were as follows :—

On the 1st of May 1857, Porter, Rolfe & Swett gave a judgment to Dilworth & Bidwell for $35,000, and on the 29th of June 1858, an execution was sued out by plaintiffs, and placed in the hands of the sheriff at half-past eleven o'clock P. M.

On the 9th of July 1858, at two o'clock, an execution at the suit of A. Childs & Co., was placed in the sheriff's hands, and on the 17th of July 1858, at six o'clock P. M., a third execution was sued out by John McGill & Son.

The sheriff returned that he had sold the personal property of defendants for $10,711.64; that he had applied $853.67 of this sum to costs and attorney's commissions in the case of Dilworth & Bidwell, and $5009.32 to the credit of their *fi. fa.*, and that in pursuance of notice from Childs & Co. and John McGill & Son, he had paid into court the sum of $4848.85.

Jasper E. Brady, Esq., was appointed to distribute sums, and report facts to the court.

This fund was claimed by Dilworth & Bidwell, on the ground that their execution was first in point of time; and was resisted by the other execution-creditors, because, as they averred, the writ of Dilworth & Bidwell was placed in the hands of the sheriff not for the purpose of levying upon and selling the personal property of defendants; that they intended to proceed only against the real estate of defendants ; and had interfered with and prevented the sheriff from levying upon the personal property of defendants until after the levy under the writs of Childs & Co. and McGill & Son.    The testimony showed the following facts : The date of the levy did not appear by any endorsement on the writ, but the property was advertised before the 17th of July.    It was proved by James McGill, who was called as a witness for Childs & Co., and examined under exception, that Dilworth & Bidwell had stated, between July 8th and 17th, that they had stopped the sheriff from making a levy twice, and it was proved by Mr. *Barton*, counsel for Childs & Co., who was called by McGill & Son, that he was watching the action of Dilworth & Bidwell on their writ ; that he went to the sheriff's office, and ascertaining that there had been no levy on the first writ, had given the sheriff positive directions to levy under his writ.    At this time the writ of McGill & Co. had not been issued.

The *fi. fa.* of Dilworth & Bidwell had been taken to the sheriff's office by Mr. *Shinn*, their attorney, who delivered it to one of the clerks in the office.    With the writ there was a description of real estate.    Mr. *Shinn* stated at the time that there was personal property at the works of Porter, Rolfe & Swett, and that he wanted the personal property exhausted, and as there would not be enough to cover the debt, he put a levy on the real estate. The hour of receiving the writ was then endorsed upon it.

[Childs & Co. v. Dilworth & Bidwell.]

The sheriff's clerk, whose duty it was to attend to advertising property, finding this writ with a levy on real estate, and a waiver of inquisition, advertised it for sale. One or two days afterwards he learned that there was personal property, and directed one of the deputies to levy upon and sell it, which was done. This information about the existence of personal property was derived from Mr. *Barton*, counsel for Childs & Co. Dilworth & Bidwell presented the sheriff with a list of the personal property of Porter, Rolfe & Swett, but it did not include the whole of it. After the personal property had been levied upon, Mr. Dilworth repeatedly requested the sheriff not to sell it until after the real estate had been sold, which was refused. The advertising of the personal property was delayed by the sheriff one day, at the request of Mr. Dilworth, who wished to consult his counsel as to the effect the sale might have. No instructions were given to the sheriff about the levy, or to the deputy, by whom it was made, except what he received from the sheriff.

The auditor held, under the authority of Hickman *v.* Caldwell, 4 Rawle 380, and Lantz *v.* Worthington, 4 Barr 153, that Dilworth & Bidwell were entitled to the money, and so reported.

After the first sale the plaintiffs in the junior executions discovered that a large lot of car-wheels, amounting to 110 tons, lying in the mill-yard, had not been sold, and directed the sheriff to advertise and sell the same on their writs; the sheriff then levied upon them, whereupon they were claimed by the Pennsylvania Railroad Company. The sheriff then obtained a rule upon the parties to interplead. This rule was entered and docketed only in the case of H. Childs & Co., and was heard and argued by the attorneys of H. Childs & Co. and John McGill & Son, on the one side, and John H. Hampton for the Pennsylvania Railroad Company. Dilworth & Bidwell did not appear to the rule, or take any part in it. On the hearing of this rule, and upon the inspection of a written contract between the Railroad Company and Porter, Rolfe & Swett, the court decided that the right of property in the car-wheels was in the defendants, and refused to direct an issue, but ordered the sheriff to proceed and sell them; which was done, and the proceeds, $2269.50, paid into court, and on the 11th of April 1859, Thomas McConnel, Esq., was appointed auditor to distribute the same. On the 1st of October 1861, he filed his report, applying the money to the writ of Dilworth & Bidwell.

To this report, as well as to that of Mr. Brady, exceptions were filed on behalf of H. Childs & Co. John McGill & Son also made an application to the court to have the Dilworth & Bidwell judgment opened, which was refused, and the case went to the Supreme Court, in which proceeding the present appellants took no part. On the 4th of January 1862, the cause was heard upon the exceptions filed by H. Childs & Co., to the two

auditors' reports, on hearing which they were confirmed by this court. From which said decree the said H. Childs & Co. entered this appeal.

*Barton*, for appellants, contended that the writ of Dilworth & Bidwell was entitled only to the proceeds of the real estate. That, having levied on real estate on the 8th of July, and advertised it for sale, they could not use the same writ to levy on personal property on the 15th of July, without releasing or relinquishing the levy on the real estate;—that the writ could not be used for a double purpose at the same time.

That the acts of Dilworth & Bidwell, in interfering with the sheriff, and in trying to induce him not to sell the personal property, but to sell the real estate, postponed their writ; and that although they might be entitled to the proceeds of the first two sales, yet clearly the junior executions were entitled to the proceeds of the sale of the car-wheels, as they had caused the same to be levied on, had successfully resisted the claim of the Pennsylvania Railroad Company, and thereby created the fund.

*W. M. Shinn*, for appellees, argued that the facts of this case did not bring them within the intent and meaning of the rule postponing the prior execution-creditor to a subsequent one: citing and relying on Lancaster Sav. Ins. *v.* Weigant, 3 P. L. J. 523; Lantz *v.* Worthington, 4 Barr 153; Brown's Appeal, 2 Casey 492; Schuylkill County's Appeal, 6 Id. 358.

The opinion of the court was delivered, January 5th 1863, by Read, J.—The judgment entered on the bond and warrant of attorney, given by Porter, Rolfe & Swett to Dilworth & Bidwell, for $35,000, and dated the 1st day of May 1857, became the subject of investigation in the course of these proceedings, and its validity was established by the court below, and affirmed by this court. Upon this judgment a *fi. fa.* was issued, and placed in the hands of the sheriff, on the 29th of June 1858, by Mr. *Shinn*, the plaintiffs' attorney. With this writ was a description of real estate, and Mr. *Shinn* stated at the time that there was personal property at the works of the defendants in South Pittsburgh, and that he wanted the personal property exhausted, and as there would not be enough to cover the debt, he put in a levy on the real estate. In the bond there was a waiver of inquisition. Now as the execution bound all the defendants' personal property in the bailiwick, from the time it was put into the sheriff's hands, and whether a levy had been made or not, it is clear that if the instructions given had been followed out, no difficulty could have occurred from any other execution having been issued afterwards. Owing, however, to some want of attention in the sheriff's office, the advertising clerk not knowing that there was

personal property, or of the instructions given by the plaintiffs' attorney, advertised the real estate for sale, but one or two days afterwards he learned there was personal property, and he caused it to be levied upon and sold. Other personal property, consisting of car-wheels, was levied upon and claimed by the Pennsylvania Railroad Company, which claim not being sustained, the same were subsequently sold on the 11th October 1858. The former sale of personal property was on the 24th July 1858, and of the real estate on the 30th of the same month.

The sales of the personal and real estate did not reach the amount of the judgment of Dilworth & Bidwell. Upon this state of facts it would be clear that áll these proceedings were regular, and there was no complaint of irregularity by the defendants in the execution.

On the 8th July 1858, H. Childs & Co. obtained a judgment against Porter, Rolfe & Swett for $450, and on the next day issued a *fi. fa.* and placed it in the hands of the sheriff. The levy under this execution was of course subject to the prior lien of the first execution. In a list of personal property furnished the sheriff by Dilworth & Bidwell, it is said the car-wheels were not included, but this is immaterial, as it was the sheriff's duty to levy upon all the personal estate, no matter by whom the information of its existence was given.

Mr. *Shinn* being absent, there is no doubt the plaintiffs, unaware of the law, and having nothing to do with the original instructions to the sheriff, desired that the sale of the real estate should take place first, but the clerk or deputy of the sheriff refused so to do, and advertised and sold the personal property first. The only delay in advertising it was for one single day, which did no harm to any one. In all this we can see nothing which should postpone the first execution to the second one.

The revisers expressly say, with regard to the order in which execution may be had of the real and personal estate of a defendant, that it is but a copy of the Act of 1705, and of course is no alteration of the old law, under which the personal estate would have been levied upon and sold, and the real estate would have been levied upon and condemned under the same writ, but sold under a subsequent writ of *vend. ex.* The apparent haste in the present case is occasioned by the 48th section of the Act of the 16th June 1836, allowing a waiver of inquisition, and the sheriff to proceed and sell the real estate, upon the writ of *fieri facias*, before the return day, without any other writ.

This protracted litigation is only a fresh lesson to clients never to attempt to interfere with executions in the hands of the sheriff, except through their counsel.

　　　　　Decree affirmed at the costs of the appellants.

The Chief Justice did not sit in this cause.