HENRY FARRIOR v. GEO. E. HOUSTON and another.

*Levy of Execution—Sale of Land under Execution—Sheriff's Deed; recitals in.*

1. A sale of real estate under an execution, issued on a judgment which is a lien thereon, is valid without a levy.

2. All that is essential to a valid sale of real estate, under execution, is, that the requirements of the law be observed, and that it be fully made known at the sale what property is being sold.

3. The recitals in a Sheriff's deed are *prima facie* evidence as to his acts recited therein.

CIVIL ACTION of Ejectment, tried before *Philips, J.,* at November Term, 1887, of DUPLIN Superior Court. ·

When this cause was before the Court, upon the defendant's appeal from a ruling, that under the pleadings, and upon an averment of title to the land in themselves, they could not be heard to controvert that of the plaintiff, by opposing evidence merely, the ruling was declared to be erroneous, the judgment reversed, and a new trial awarded; 95 N. C., 573.

Upon the last trial, the plaintiff, who claimed the property under one I. B. Kelly, exhibited in evidence an execution issued in the name of the said Kelly, against the defendant George E. Houston and Edward W. Houston, administrator, to Bland Wallace, Sheriff of Duplin, under which, after a levy of the same, the premises claimed were sold and conveyed to said Kelly. The levy was endorsed thereon in these words:

" Levied this execution upon George E. Houston's interest in 679 acres of land, more or less, in Kenansville Township, adjoining the lands laid off to him as a homestead, and others. B.· WALLACE, *Sheriff.*"

It appeared from the testimony of one A. B. McGowen,. that 182 acres were assigned for the debtor's homestead, and,

that outside of this tract, the said George B. Houston then owned 679 acres of land in Kenansville Township, and no more, and that of these 679 acres, 353 acres adjoined the homestead, and 326 acres, that are now in controversy, do not adjoin the homestead, and are two miles distant from it.

The Sheriff's deed is as follows;

STATE OF NORTH CAROLINA, }
          DUPLIN COUNTY.    }

Know all men by these presents, that the undersigned, Sheriff of the County of Duplin, and State above written, by virtue of an execution issued from the Superior Court of said county, in the case following, to-wit: in favor of Isaac B. Kelly against George E. Houston and Edward W. Houston, administrator with the will annexed of Calvin J. Houston, deceased, and other executions and *ven. ex.*, as of record doth appear, having levied said execution, or *fieri facias*, on the lands and tenements of the said George E. Houston, hereinafter described, on the 20th day of September, 1869—said lands being in excess of his homestead, which had first been duly laid off—and having made advertisement according to law, and sold said lands and tenements at public sale, for cash, on the first Monday of November, 1869, at the courthouse door in said county, when and where Isaac B. Kelly, of the county of Duplin, and State of North Carolina, became last and highest bidder, at the sum of three hundred and thirty dollars, which said sum has been paid to the undersigned, in accordance with the terms of said sale. In consideration of the premises, and in further consideration of the purchase money, paid as aforesaid by the said Isaac B. Kelly, the receipt whereof is hereby acknowledged, hath bargained and sold, and by these presents doth bargain and sell unto the said Isaac B. Kelly and his heirs, all the right, title and interest of the said George E. Houston, as aforesaid, in and to the following tracts or parcels of land, levied on

as aforesaid, situate in Kenansville Township, in said County of Duplin, and bounded as follows: 1st tract: Beginning at an ash in Dark Branch, and running S. 9 W. 44 poles to a pine at the road, same course continued to Neal's line; thence with his line N. 75 W. about 50 poles to a pine; thence with his other line S. 36¼ W. 249 poles to a pine in the calf pasture, N. 35½ W. 186 poles to a pine; thence N. 40 W. 40 poles to a pine; thence N. 14 W. about 96 poles to the run of Dark Branch; thence down the run to the beginning—containing 326 acres, more or less. 2d tract includes all the land devised by George E. Houston, Sr., to said G. E. Houston, except 182 acres set apart and allotted to him as a homestead, and is bounded as follows, viz.: Beginning at a pine near the colored people's church, on the public road—McGowen's corner, formerly James Pearsall's—and the beginning corner of said George E. Houston's homestead tract, and runs with McGowen's line to Dr. I. C. M. Loftin's corner; then with his line to John A. Bryan's, formerly Oliver's corner; then with his line to the public road, west of the branch crossing the road; then along the road westerly to the foot of a cart-path at the turn of the road, the last corner of said G. E. Houston's homestead tract; then with his line to the beginning, supposed to contain _____ acres, more or less. To have and to hold said lands and premises, with all and singular the privileges, improvements and appurtenances to the same belonging, to him the said Isaac B. Kelly, his heirs and assigns, in as full and ample a manner as the undersigned is empowered by virtue of his office to convey and assure the same. And the undersigned, Sheriff as aforesaid, doth covenant, promise and agree to and with the said Isaac B. Kelly, his heirs and assigns, that he and they shall and may at all times hereafter, have, hold, occupy, use and possess said lands and premises, free and clear of, and from all incumbrances had, made or done by the undersigned, or by his order, means or procurement; and that the under-

signed will forever warrant and defend said lands and premises to the said Isaac B. Kelly, his heirs and assigns, so far as his said office of Sheriff will authorize and enable him to do, and no further.

In testimony whereof, the undersigned, Sheriff aforesaid, hath hereunto set his hand and seal, this 3d day of May, 1878.                    BLAND WALLACE, *Sheriff*, [Seal].

Signed, sealed and delivered in presence of

R. W. HARGRAVE.

The Court being of opinion that the plaintiff was not entitled to a verdict upon his proofs of title, and having so intimated, he submitted to a nonsuit, and appealed.

*Mr. W. R. Allen,* for the plaintiff.
*Mr. H. R. Kornegay,* for the defendant.

SMITH, C. J., (after stating the facts). The only question presented is, whether the alleged imperfect description of the land in the levy invalidates the subsequent proceeding to sell, and renders the sale and Sheriff's deed void.

There have been numerous cases in which defects were alleged to exist in a levy upon land made under an execution from a Justice of the Peace, the imperfect description of the land being held to be too vague to warrant further proceedings for a sale.

The necessity of a reasonable certainty in ascertaining and identifying it, grew out of the fact that the process, with the levy, were required to be returned to the County Court where issued and order made to the Sheriff to sell the land so levied on. A levy was therefore a necessity in such cases, and of course the land must be sufficiently described to enable the Sheriff, under the *venditioni exponas*, to know what he was to sell, and that bidders might understand what they were buying, and yet very imperfect descriptions have been upheld. Thus, a levy " upon all the lands of the de-

fendant lying on Queen's creek," was held to be fatally defective without evidence of identity, but a levy "upon all the lands of the defendant lying on the head waters of Ketchum's mill pond, adjoining the lands of said Ketchum," was held to be sufficient to warrant the sale. *Huggins* v. *Ketchum,* 4 D. & B., 414.

Again, in *McLean* v. *Paul,* 5 Ired., 22, RUFFIN, C. J., says that a constable's levy upon land in this form: "This day levied on the legal and equitable interest of Abraham Paul to 450 acres of land, more or less, in Robeson County, adjoining the lands of Giles S. McLean, Dugal McCallum, John McLean and others," is not objectionable upon its face so as not to admit of proof of identity.

In *Judge* v. *Houston,* 12 Ired., 108, the Sheriff, with a writ of *fieri facias* in his hands, endorsed on it: "Levied this execution upon the land of Stephen M. Houston, on the east side of North East river, adjoining the lands of Stephen M. Grady and others, and, after due advertisement, sold the land levied on," &c. There were two tracts of land, on one of which the defendant lived, and had cultivated for several years, in turpentine; the other, which did not adjoin the first, but was two miles from it. The defendant in the action, who was defendant in the execution, objected to the levy, for its vagueness and uncertainty, and that it could not embrace the second tract, which did not touch the lands of Stephen M. Grady, as was conceded. In noting the objections, which were overruled in the Superior Court and brought up for examination by the defendant's appeal, PEARSON; J., uses this language: "The defendant's counsel did not advert to the difference between such a levy, which need not be returned, and the levy of a constable, which creates a lien, and must be returned, and must have a certain degree of particularity, *so as to identify the land and enable the Sheriff to know which land to sell under the venditioni exponas,* and of which, notice must be given. It is not easy to perceive,"

he adds, "why a levy is required when the land is sold under the *fi. fa.*"

Still less reason exists for a levy upon land under the new practice, by which, the command of the writ in the nature of a *venditioni exponas* is to sell, in the absence of any personal estate which can be seized by the officer, the real property belonging to the debtor when the judgment was docketed in the county, or acquired by him thereafter. *The Code*, § 448, par. 1.

Accordingly, in answer to an exception to the absence of any levy, this Court say: "There would seem to be little, if any, advantage, and certainly *no necessity*, for making a levy on the real property of the debtor under the present system of practice, which makes a lien, &c. * * * The only effect of a previous levy is, the specific appropriation of the property on which it is made, out of other equally liable to the plaintiff's debt, and may confer an equity on others to have the property first levied on sold and exhausted before resorting to the other real property of the debtor." *Surratt* v. *Crawford*, 87 N. C., 372; and the proposition is reiterated in *Barnes* v. *Hyatt*, decided at the same term, and reported at page 315. All that is essential is, that the requirements of the law be observed, and that it be fully made known what property, describing it with sufficient certainty, is exposed to sale, and what the bidder, who may purchase, acquires. The Sheriff's deed, whose recitals as to his own acts are *prima facie* evidence of the facts recited, expressly declares that the sale was made on the day and at the place specified by law, of the lands and tenements of the said George B. Houston, levied and "hereinafter described," and the boundaries of each tract are definitely set out in the deed. *McKee* v. *Lineberger*, 87 N. C., 181; *Miller* v. *Miller*, 89 N. C., 402.

We must, therefore, declare there is error, and reverse the judgment; and it is so ordered.

Error.                                        Reversed.