# Delaware County Trust Company v. Goldberg

*John E. McDonough* and *Paul Lessy,* for petitioner.

*Taylor, Chadwick & Weeks,* and *Paul Lane Ives,* contra.

MacDade, J., April 8, 1935.—This matter is before us on a petition by the defendant, Samuel Goldberg, to set aside an inquisition and condemnation of real estate under a writ of fieri facias issued as of the above number and term.

The facts, as shown by the record in this case, are that, on or about March 9, 1933, the defendant, Goldberg, executed a promissory note, as endorser, and delivered same to the plaintiff. In default of payment, an action was brought on the note, and judgment was entered against the defendant in the sum of $1,645.51, the date of said judgment being December 30, 1933.

The obligation represented by this note extended back as far as February 2, 1926, and was renewed from time to time, the note in suit being the last renewal note so given.

A writ of fieri facias was issued upon this judgment on January 11, 1934, and the sheriff was directed by the plaintiff to levy upon all the right, title and interest of the defendant, Samuel Goldberg, in and to a number of

parcels of real estate in the City of Chester. The records of the Recorder of Deeds of Delaware County, offered in evidence on the hearing of this petition, show that, when this obligation, above referred to, was created and during its continuance, Goldberg owned these parcels of real estate in his own name. However, on August 26, 1932, he executed a deed or deeds purporting to convey all these properties, which theretofore he had owned alone, to himself and wife, "as tenants by entireties". The deed expressed a nominal consideration.

Pursuant to the said writ of fieri facias, the sheriff summoned an inquest. The sheriff's jury met and condemned the land. The defendant then moved to set aside this inquisition, alleging numerous reasons, among them, that the jury was not sworn and that the inquest was not conducted by the sheriff. By agreement, the court set aside this inquisition. (See order filed June 16, 1934.)

A second inquest was held and for the second time the jury condemned the land. The defendant moved to set aside this inquisition and his petition for this purpose is the matter now submitted for determination. In support of his motion he assigns reasons which may be summarized as follows:

1. No levy was made upon the personal property of Samuel Goldberg prior to the issuance of the fieri facias to condemn.

2. The inquisition was not performed by the sheriff or one of his deputies.

3. No evidence was submitted to the jury of the description of the properties other than a mere recital of their street addresses.

4. No evidence was submitted to the jury of the rents and profits of the real estate and whether the rents and profits would be sufficient to satisfy the judgment within seven years.

The plaintiff filed an answer to this petition.

A hearing was had on December 12, 1934. The defendant called R. Paul Lessy, Esq., as a witness. He testified

that he was present in the sheriff's office on September 24, 1934, when the inquest was held. He saw the sheriff's jury: the sheriff was not present. The jury was sworn by Mr. Pierson, a deputy sheriff. One of the jurors, Mr. Gibson, read the writ and descriptions of the properties by number and street; he did not read the full descriptions (i. e., by courses and distances or by metes and bounds). Mr. Gibson thereupon stated to the other jurors that "Paul Ives told him Goldberg was not in possession and could not pay the debt". Thereupon the jurors signed the condemnation. No evidence was offered by anyone of rents, encumbrances, or the like. All this was Mr. Lessy's testimony. On cross-examination he said that he had been requested to attend the inquest by Mr. McDonough, Goldberg's attorney, with whom Mr. Lessy is associated in the practice of law.

This was all of the evidence offered by the defendant except the writ of fieri facias, which defendant offered for the restricted purpose of showing "that there had been no prior levy upon the personal property of the defendant".

Mr. Gibson was called by the plaintiff and testified that he was one of the jurors. He said that he knew that the levy was on the right, title, and interest of Goldberg and that the estate was held by entireties now. He told the other jurors that Goldberg was not in possession and that he and his wife held title. The plaintiff then placed in evidence the writ of fieri facias and the deeds showing the status of the title in Goldberg, by the conveyance to him, and the conveyance from Goldberg to himself and wife in August 1932.

The question is whether this inquisition and condemnation should be set aside.

To answer this we shall consider one phase only—may a plaintiff in execution (fieri facias) ignore the personal property owned by a judgment debtor and proceed directly against the real estate of the defendant?

The defendant contends that there was no writ issued

or levy made upon the personal property of the defendant prior to the issuance of the writ of fieri facias under which the inquest was held nor any levy upon personalty, if any, under the authority of the writ of fieri facias issued. This is conceded by the plaintiff. Is not this fatal? Should not this plaintiff have levied upon the personal property or estate of the defendant as well as levied upon the real estate and conducted an inquest under the same writ; but the real estate, if condemned, would have to be sold under a writ of venditioni exponas: Child & Co. v. Dilworth & Bidwell, 44 Pa. 123, 127.

The latter is a case where the sheriff under a writ of fieri facias by an oversight at once advertised the real estate for sale and failed to carry out plaintiff's instructions to exhaust the personal property first. Later the sheriff discovered his error and learned there was personal property and directed his deputy to levy upon and sell it, which was done. Of course, the proceeds of the sale of personal property being insufficient to pay the judgment, the real estate was thereafter sold. This was held to be regular for there was no complaint of irregularity by the defendant in the execution: See Act of June 11, 1879, P. L. 122, sec. 1, 12 PS §2314.

The Act of June 16, 1836, P. L. 755, sec. 19, 12 PS §2111, provides:

"The plaintiff in every judgment which shall be obtained in any court of this commonwealth, for the recovery of money, may have execution thereof, subject to the restrictions and qualifications herein provided, against the person and estate of the defendant, in the following order, to wit:

"I. Upon the personal estate of the defendant.

"II. Upon his real estate.

"III. If he have neither personal nor real estate liable to execution, then upon the person of the defendant."

The same act, in section 41, provides:

"The officer to whom any such writ may be directed, shall, if the defendant therein refuse or neglect to pay

the debt, and costs, proceed to levy and sell so much of the defendant's personal estate as shall be sufficient for that purpose, and make return of his proceedings to the court, according to the command of such writ."

Later, in the same act, section 43, it is said:

"If sufficient personal estate cannot be found by such officer, he shall proceed to levy upon the defendant's real estate, or such part thereof as he may deem sufficient to pay the sum to be levied, as aforesaid, but not less than a whole tract shall be levied on."

It will be observed, therefore, that it was the duty of the sheriff to levy upon the personal property and that if sufficient personal property cannot be found by the officer executing the writ he should proceed to levy upon the defendant's real estate—consisting of 65 dwellings for a debt of $1,645.57. On the face of this record it would seem the just thing for the sheriff to find the personal property of defendant, and the plaintiff should have so instructed him, and to sell the same; as compared with the value of the real estate and the small indebtedness outstanding in this financial and economic period of distress. Thereafter if the personalty were insufficient he should proceed with the levy, etc., of the real estate.

In First National Bank of Bellefonte v. Stevenson et al., 18 D. & C. 508, we find support for our conclusion, wherein it was said (there being no levy or sale upon defendant's personal property):

"The second question for our determination involves the right of the plaintiff bank to ignore personalty and to proceed directly against the real estate of the defendants. The writ under consideration is a fi. fa. Section forty-one of the Act of June 16, 1836, P. L. 755, directs as follows:

" 'The officer to whom any such writ may be directed, shall, if the defendant therein refuse or neglect to pay the debt, and costs, proceed to levy and sell so much of the defendant's personal estate as shall be sufficient for

that purpose, and make return of his proceedings to the court, according to the command of such writ.'

"This enactment has not been repealed. Anticipating the probability of an insufficiency of personal property, the Act of 1836, supra, continues to provide, in section forty-three thereof, as follows:

" 'If sufficient personal estate cannot be found by such officer, he shall proceed to levy upon the defendant's real estate, or such part thereof as he may deem sufficient to pay the sum to be levied, as aforesaid, but not less than a whole tract shall be levied on.'

"Then follows the cumbersome procedure of inquest, condemnation and sale, to avoid which modern procedure, availing itself of the provisions of section forty-five of the Act of 1836, supra, has provided for waivers of such inquisition and condemnation and has provided for the sale of such real estate upon a writ of fi. fa. after such waivers filed. The act, however, makes no specific provision for waiving the requirements of section forty-one . . . nor does any waiver of such requirement appear to have been attempted by the terms of the note upon which judgment was entered herein. *The requirements of section forty-one are mandatory, and before real estate may be sold upon a fi. fa. it must appear that (1) levy and sale of defendant's personalty has been had; (2) that the proceeds of the sale of such personalty have been insufficient to pay debt, interest and costs in full; and (3) that inquisition has been waived and* the property voluntarily condemned. We are not here called upon to decide the effect of an amicable agreement between plaintiff and defendant that the personalty be ignored and that the sale be directed against the real estate ab initio. The petitioner defendant is here contending that the sheriff is without jurisdiction to levy and sell his real estate without first having levied upon, sold and exhausted the personalty of himself and his codefendants. This contention is wholly sound under the present legislation in this Commonwealth.

". . . Levy heretofore made upon the real estate . . . is vacated and set aside." (Italics ours.)

This has been the law in this Commonwealth since at least the beginning of the nineteenth century, for in Maybury et al. v. Jones, 4 Yeates 21, it was held that: "The sheriff is bound to sell the defendant's personal property, before he can proceed to the sale of his lands: but he may be discharged from responsibility in this particular, by the act of the party himself."

These decisions are not peculiar to Pennsylvania, for in other jurisdictions this question has been similarly decided: United States v. Drennen et al., 25 Fed. Cas. 908, no. 14992; Jackson v. Parkersburg & O. V. Electric Ry. Co., 233 Fed. 784; Weir v. Clayton, 19 Ala. 132; Bartholomew v. Hook et ux., 23 Cal. 278; Coe et al. v. Wickham, 33 Conn. 389; Walker, Admr., v. Hukill, 1 Harr. (Del.) 347; Eaves v. Garner et al., 111 Ga. 273, 36 S. E. 688; Robinson et al. v. Burge, 71 Ga. 526; Sansberry et al. v. Lord et al., 82 Ind. 521; Nelson et al. v. Bronnenburg, 81 Ind. 193; Collins v. Ritchie, 31 Kan. 371, 2 Pac. 623; Greeno v. Barnard et al., 18 Kan. 518; Koehler v. Ball et al., 2 Kan. 160, 83 Am. Dec. 451; Breckinridge v. Floyd, 7 Dana (Ky.) 456; Morgan's Administrator v. Woorhies, 3 Mart. O. S. (La.) 462; Jakobsen v. Wigen, 52 Minn. 6, 53 N. W. 1016; Flanders v. Batten, 50 Hun 542, 3 N. Y. Supp. 728; Neilson v. Neilson, 5 Barb. (N. Y.) 565; Farrior v. Houston et al., 100 N. C. 369, 6 S. E. 72; Sloan, Admr., v. Stanly et al., 33 N. C. 627; Lanier v. Stone, 8 N. C. 329; Wright v. Young et al., 6 Ore. 87; Aldrich et al. v. Wilcox et al., 10 R. I. 405; Kenyon v. Clarke, 2 R. I. 67; Shuler et al. v. Halvor, 38 S. D. 617, 162 N. W. 389; Hassell et al. v. Southern Bank of Ky., 2 Head (Tenn.) 381; Dice v. Penn et al., 2 Swan (Tenn.) 561; Stockard's Heirs v. Pinkard, 6 Humph. (Tenn.) 119.

Section 20 of the Act of 1836, supra, seems at first blush to sustain the position of the plaintiff herein. It is there provided:

"That it shall be lawful for the plaintiff to have execution against the real estate of the defendant, or against his person, in the manner hitherto allowed, or at his election, he may proceed to obtain the satisfaction of his judgment out of such personal estate, as is *by the act* now first made liable to execution."

This section of the Act of 1836 expressly incorporates the latter sections under the same act. Reading the three sections together, a plaintiff may proceed to collect a judgment in three ways. It is respectfully urged that this is the procedure under this act: (1) Execution against the person of the defendant (section 20), or (2) execution against the personal property of the defendant (section 20), or (3) execution against the real property of the defendant (section 20); but before the real property may be levied upon the personal estate must be insufficient (section 43) and the personal estate shall only be levied upon if the defendant refuse or neglect to pay the debt (section 41).

Plaintiff cites Geim v. Royal Laundry Co., 68 Pitts. 205, and Union Trust Company of Pittsburgh v. Western Pennsylvania Amusement Co., 311 Pa. 317.

We fail to see that they are controlling, for in the former case this question did not arise until after the acknowledgment of the sheriff's deed and in the latter case the exceptions were filed after the sheriff's deed was confirmed absolutely; and there, too, the defendant admitted on the record that the personalty was insufficient to satisfy the judgment. There is no such admission in the present case; in fact the sheriff had no instructions to levy upon personalty nor did he look for same, as was his duty. We think the failure to first levy upon personalty is a valid objection.

Whether the inquisition was conducted according to law, in view of our conclusions upon the objection immediately hereinbefore referred to, we need not discuss except to say for future guidance that the sheriff should follow strictly the provisions of the several acts of as-

sembly appertaining to inquisitions; such as the Act of June 11, 1879, P. L. 122, sec. 2, as amended by the Act of May 10, 1881, P. L. 13, sec. 1, 12 PS §2382, which provides:

". . . whenever any real estate shall be taken in execution under existing laws of this commonwealth by any sheriff, it shall be his duty to summon an inquest of six men, *for the purpose of ascertaining whether the rents and profits of such estate, beyond all reprises, will be sufficient to satisfy, within seven years, the judgment on which such execution was issued, with the interest and costs of suit; and he shall make a return, in due form of law, of the inquisition so taken, to the court, with the writ*". (Italics ours.)

The Act of May 2, 1929, P. L. 1278, art. III, sec. 186, 16 PS §186, provides:

"Whenever the sheriff is or shall be required by law to act in person under any writ of inquisition, condemnation . . . proceedings . . . the said sheriff may act either in person or by a regularly appointed deputy sheriff."

The holding of an inquisition is a judicial act which formerly could not be performed by a deputy: Haberstroh v. Toby, 9 Phila. 614; Klopp v. Breitenback, 6 Leg. Gaz. 87 (cited in note 1 in 12 PS §2382).

These cases are still authority that an inquisition is a judicial act which must be performed by a sheriff or his authorized deputy regularly appointed (Act of 1929, supra). All that the sheriff and/or his regularly appointed deputy did in the present case was to summon the jury and put them under oath. Robert Gibson, one of the jurors, stated that he was informed by Paul Lane Ives, Esq., the attorney for the plaintiff, that the "defendant was not in possession" and so told his fellow jurymen. He read to the jury a mere recital of the street addresses of the properties and the amount of the debt. These proceedings were not conducted by the sheriff or one of his regularly appointed deputies. There was noth-

ing produced or said to the jury whether the properties were seated or unseated; if seated, whether brick, frame, or stone, and nothing was said as to rents, issues, profits, taxes, encumbrances, or income that was derived therefrom. Paragraph 7 of the petition, *which was admitted* in the answer, averred that "there was no evidence of any kind or manner produced before the inquest as to the rents and profits of the said estate". Reprises, which were a necessary part of the inquiry, were not produced. The condemnation of the jury, without any evidence to sustain its finding, cannot be sustained by the court.

It was the duty of the sheriff or the defendant to produce the evidence before the jury and, because of the failure of either of these two parties to produce the evidence, the condemnation of the jury should not be upheld, for the inquiry was not made and the purpose for which the jury was called had failed.

And it was the duty of the sheriff to produce the evidence before the jury because this was a judicial act presided over by the sheriff.

The plaintiff, in order to prove his case, must produce evidence sufficient to condemn. Upon his failure, there can be no condemnation. A sale of real estate under a writ of fieri facias, without a condemnation as a result of an inquisition or a waiver thereof, is absolutely void: Zuver v. Clark, 104 Pa. 222, 227.

And, now, April 8, 1935, the matter of the petition of the defendant, Samuel Goldberg, and rule to show cause why the inquisition and condemnation in the above writ of execution should not be set aside coming on to be heard by the court en banc, together with oral arguments and briefs, after due consideration thereof, the court doth order and decree that

1. The prayer of petition be and is hereby granted, and

2. The rule to show cause why the inquisition and condemnation in the writ of execution herein should not be set aside be and is hereby made absolute sec. reg. et sec. leg.       From William R. Toal, Media.